JEAN S. MARTIN
*Admitted Pro Hac Vice*
jeanmartin@ForThePeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
2018 Eastwood Rd. Suite 225
Wilmington, NC 28403
Telephone: (813) 559-4908
Facsimile: (813) 222-4795

*Attorneys for Plaintiffs and the Proposed Class and Subclasses*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOWHARAH HAMEED-BOLDEN and ALI CONRAD O'BRIEN, On Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> FOREVER 21 RETAIL, INC., and FOREVER 21, INC. <br> Defendants. | Case No.: 2:18-cv-03019-SJO-JPR <br><br> **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND DIRECTION OF NOTICE UNDER RULE 23(E) AND MEMORANDUM OF LAW IN SUPPORT THEREOF** |

## **TABLE OF AUTHORITIES**

**Cases**

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ................................................. 11, 14, 15

*American Airlines v. Wolens*, 513 U.S. 219  (1995) ...................................................... 13

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ............................................ 24

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ................................. 16

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ................................... 15

*Cotter v. Lyft, Inc.,* 193 F. Supp. 3d 1030 (N.D. Cal. 2016) ........................................... 17

*Dugas v. Starwood Hotels & Resorts Woldwide, Inc.*, 3:16-cv-00014-GPC-BLM (S.D. Cal.) .................................................................................................................................. 21

*Duhaime v. John Hancock Mut. Life. Ins. Co.*, 177 F.R.D. 54 (D. Mass. 1997) ............... 16

*Eddings v. DS Services of America, Inc.*, No. 15-cv-02576-VC, 2016 WL 3390477 (N.D. Cal. May 20, 2016) ...................................................................................................... 17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................ 11, 12, 13, 14

*Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010) ...................................................... 10

*Hunt v. VEP Healthcare, Inc.*, No. 16-cv- 04790-VC, 2017 WL 3608297 (N.D. Cal., Aug. 22, 2017) ........................................................................................................... 17

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ............ 16, 18

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales and Mktg. Litig.*, 2010 WL 3931096 (N.D. Cal. Oct. 6, 2010) ............................................................................................ 13

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) ......................................................................................... 15

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ......................................................................................... 20

*In re High-Tech Employee Antitrust Litig.*, 2014 WL 3917126 (N.D. Cal. Aug. 8, 2014) ................................................................................................................................. 16

1  *In re Linkedin User Privacy Litig.,* 309 F.R.D. 573 (N.D. Cal. 2015) ............................ 15

2  *In re Syncor ERISA Litigation*, 516 F.3d 1095 (9th Cir. 2008) ........................................ 15

3  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................. 17, 18

4  *In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL 14-2522-PAM, 2017

5  WL 2178306 (D. Minn. May 17, 2017) ...................................................................... 22

6  *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351 (N.D.

7  Ga. Aug. 23, 2016) ................................................................................................ 15, 22

8  *In re Yahoo Mail Litig.*, No. 13-cv-4980, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) 10

9  *Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017) ................................... 12, 13, 15

10 *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234  (9th Cir. 1998) ............................ 20, 23

11 *Marin v. General Assembly Space, Inc.*, No. CV 17-05449-SJO-KSX, 2018 WL 4999955

12 (C.D. Cal. July 31, 2018) ...................................................................................... 18, 19

13 *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ...................................... 13

14 *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ............................ 25

15 *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523 (C.D. Cal. 2004) ...... 16

16 *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110 (N.D. Cal. 2016) ......................... 17

17 *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco,* 688 F.2d.

18 615 (9th Cir. 1982) ..................................................................................................... 16

19 *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157 (9th Cir. 2013) ............................. 10

20 *Remijas v. The Neiman Marcus Group, LLC*, No. 14-cv-1735, ECF No. 145 (March 17,

21 2017) ........................................................................................................................... 22

22 Rodriguez v. W. Publ'g Corp., 563 F.3d 948  (9th Cir. 2009) .......................................... 19

23 *Smith v. Triad of Alabama, LLC,* 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) ........... 21

24 *Staton v. Boeing Co.,* 327 F.3d 938 (9th Cir. 2003) ........................................................ 12

25 *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ....................................... 12, 14

26 *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ...................................... 15

27 *Vaquero v. Ashley Furn.*, 824 F.3d 1150 (9th Cir. 2016) ................................................ 14

28 *Viceral v. Mistras Grp., Inc.*, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) .................. 17

Plaintiffs' Memorandum of Law in Support of Their Unopposed Motion for Preliminary Approval of the Class Action
Settlement and Direction of Notice under Fed. R. Civ. P. 23(e)
Case No.: 2:18-cv-03019-SJO-JPR

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ..........................................................11

*West v. Circle K Stores, Inc.*, No. Civ S-04-0438 WBS GGH, 2006 WL 1652598 (E.D. Cal. June 13, 2006) ..........................................................18

*Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89 (2d Cir. 2017) ....................................21

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1715 ..........................................................24

**Other Authorities**

2018 Amendment Advisory Committee Notes ..........................................................17

*Manual for Complex Litigation,* Fourth, § 21.61 (2004) ..........................................................15

*Manual for Complex Litigation*, Fourth, § 21.632 (2004) ..........................................................11

**Rules**

Fed. R. Civ. P. 23(a) ..........................................................11

Fed. R. Civ. P. 23(a)(1) ..........................................................11

Fed. R. Civ. P. 23(b) ..........................................................13

Fed. R. Civ. P. 23(b)(1) ..........................................................12

Fed. R. Civ. P. 23(c)(2)(B) ..........................................................11

Fed. R. Civ. P. 23(e) ..........................................................11, 15

Fed. R. Civ. P. 23(g)(1)(A)(i-iv) ..........................................................27

Fed. R. Civ. P. 23(g)(1)(B) ..........................................................27

Plaintiffs' Memorandum of Law in Support of Their Unopposed Motion for Preliminary Approval of the Class Action Settlement and Direction of Notice under Fed. R. Civ. P. 23(e)
Case No.: 2:18-cv-03019-SJO-JPR

## I.    INTRODUCTION

Plaintiffs Jowharah Hameed-Bolden and Ali Conrad O'Brien ("Plaintiffs") submit this Memorandum of Law in support of their Unopposed Motion for Preliminary Approval of the Class Action Settlement with Defendants Forever 21 Retail, Inc., and Forever 21, Inc. ("Defendants" or "Forever 21") (the "Motion"). This Motion, if approved by the Court, will provide immediate and significant benefits to all persons affected by the 2017 Security Incident[1] on which this action is based, during which approximately one million payment card numbers may have been compromised when used at certain of Defendants' retail locations.

By submitting a clear and straightforward Claim Form,[2] any member of the Settlement Class who spent time or lost money as a result of the Security Incident will be able to recover up to $250 as reimbursement for their out-of-pocket expenses (including time spent at a rate of $25 per hour), or up to $10,000 for certain extraordinary expenses. There is no total cap on the total amount available for Settlement Class members' recovery. Additionally, Defendants have agreed to significant equitable relief in the form of enhanced data security remediation measures, including the implementation of EMV chip technology and annual testing of PCI-DSS compliance, designed to prevent another, similar data breach from occurring in the future. Further, Defendants will commit additional monies to pay costs of settlement administration; attorneys' fees, costs, and expenses; and a service award to each Plaintiff for their time and commitment to this action.

Plaintiffs request this Court grant the Motion, which Defendants do not oppose.  The Settlement meets all of the standards for preliminary approval and direction of notice as it incorporates fair, reasonable, and adequate relief for the Settlement Class. As detailed below, the information provided is sufficient to permit the Court to provisionally certify the Settlement Class under Rule 23 and direct the notice to be disseminated. The proposed

---

[1] Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement, which is being filed concurrently herewith as Exhibit 1.

[2] The Claim form is submitted as Exhibit B to the Settlement Agreement ("SA").

Notice Plan is the best, practicable notice and comports with both Rule 23 and due process. For the reasons argued below, the Court should grant preliminary approval of the Settlement and authorize notice of the proposed settlement to be disseminated to Settlement Class members.

## II.    SUMMARY OF THE LITIGATION

On December 28, 2017, Defendants disclosed that hackers had been able to gain access to Forever 21's data systems and install malware to harvest Customer Data for seven months, from April 3 to November 18, 2017 (the "Security Incident"). First Amended Complaint ("FAC"), ECF. 28, ¶ 4. Despite having the capability of encryption technology that protects against breaches, Defendants admitted that the encryption technology was not always on for some of their point of sale ("POS") devices, which allowed the malware to be installed. *Id*. ¶ 6. Further, completed payment card transaction authorizations were being stored in a log and the malware was able to find and potentially extract payment card information pre-dating April 3, 2017 for any POS device without encryption technology in use. *Id*. ¶¶ 8–9. In addition to Defendants' failure to prevent the Security Incident, Defendants failed to detect the breach while it was ongoing for seven months, and failed to detect the breach itself, only learning of it from a third party. *Id*. ¶¶ 4, 11.

In July and August of 2017, Plaintiff Jowharah Hameed-Bolden made multiple in-store purchases at Forever 21 stores for her children's back-to-school shopping, using her credit union debit card which she uses sparingly. *Id* ¶ 30. In September 2017, Plaintiff Hameed-Bolden experienced fraudulent activity on her debit card, sending her account into overdraft and causing her to incur hundreds of dollars in late fees as she did not then have enough money to pay her bills. *Id*. After Plaintiff Hameed-Bolden dealt with the credit union for 6 weeks to resolve this matter, the credit union reversed the fraudulent charges but has refused to reverse the overdraft fees she incurred. *Id*. The credit union did ultimately issue her a new debit card because of the fraudulent activity experienced as a result of the Security Incident. *Id*.

Between April 2017 and October 2017 Plaintiff Ali Conrad O'Brien made multiple in-store purchases at Forever 21 stores using her CitiBank Mastercard debit card. *Id* ¶ 31. In December 2017, Plaintiff Conrad O'Brien received an email from Forever 21 thanking her for a recent purchase, which she did not make. Upon investigation, she discovered that someone used her CitiBank Mastercard debit card to make charges totaling $200. *Id.*

Based on the foregoing, Plaintiffs initiated this class action litigation on April 10, 2018, bringing claims for violations of: (1) California's Unfair Competition Law for Unlawful Business Practices; (2) California's Unfair Competition Law for Unfair Business Practices; (3) Deceit by Concealment; (4) Negligence; (5) Breach of Implied Contract; (6) Negligence *Per Se*; (7) Unjust Enrichment; (8) Declaratory Judgment; (9) Violation of California's Customer Records Act for Inadequate Security; and (10) Violation of California's Customer Records Act for Delayed Notification. ECF. 1.

Following discussions and negotiations with Defendants' counsel, Plaintiffs amended their complaint on June 29, 2018, and brought claims for violations of: (1) California's Unfair Competition Law for Unlawful Business Practices; (2) California's Unfair Competition Law for Unfair Business Practices; (3) Deceit by Concealment; (4) Negligence; (5) Breach of Implied Contract; (6) Declaratory Judgment; and (7) Violation of California's Customer Records Act for Inadequate Security. ECF. 28; FAC. Defendants then moved to dismiss the FAC on July 13, 2018, ECF. 29, to which Plaintiffs filed their opposition on August 6, 2018, ECF. 36, and Defendants replied on September 10, 2018, ECF. 37. On October 1, 2018, the Court granted in part and denied in part Defendants' Motion to Dismiss, holding: (1) Plaintiffs sufficiently alleged injury under contract and California's Unfair Competition Law; (2) Plaintiffs' claims for deceit by concealment and negligence were precluded by California's economic loss doctrine; (3) Plaintiff Hameed Bolden sufficiently alleged a claim under the California Customer Records Act; (4) Plaintiffs sufficiently alleged claims under California's Unfair Competition Law; and (5) Plaintiffs could proceed on their declaratory relief claim. ECF. 41. Although the Court permitted Plaintiffs to amend their complaint, Plaintiffs chose to focus on the merits of the

Court's ruling on dismissal and pursue litigation on the surviving claims. Defendants answered the FAC on October 15, 2018. ECF. 45. Following Defendants' Answer, the Parties met, conferred, and submitted a Joint Rule 26(f) Report for the Court's consideration, notably informing the Court of the Parties' desire to mediate the case. ECF. 49. On February 19, 2019, the Parties engaged in a full-day mediation, lasting well into the evening hours, with retired United States District Judge Gary Feess of Phillips ADR, and reached the Settlement currently before this Court for preliminary approval.

## III.   THE TERMS OF THE PROPOSED SETTLEMENT

As discussed in greater detail below, the Settlement provides for cash payments to Settlement Class members for reimbursement of a variety of expenses, including time spent, out-of-pocket expenses, and extraordinary losses. SA, at ¶¶ 2.1-2.2. Additionally, as part of the settlement negotiations and Settlement Agreement, Defendants have undertaken significant measures to increase its data security measures and consumer information protection procedures. SA, at ¶2.4; Declaration of Jean S. Martin ("Martin Decl."), attached hereto as Exhibit 3, at ¶ 31. Because of the extent of informal exchange of discovery prior to mediation, including conducting a Rule 26(f) conference, exchanging mediation briefs, and Defendants' production of their PFI report from the Security Incident which was reviewed and analyzed by Plaintiffs' cybersecurity expert, Plaintiffs' counsel was adequately informed and able to determine the scope and extent of the Security Incident as well as the preventative measures necessary for Defendants to implement in order to protect consumers' information in the future. Martin Decl., at ¶ 31. In exchange for the consideration of the terms of the Settlement Agreement, Plaintiffs agree to provide Defendants with a release of claims relating in any way to the alleged conduct that gave rise to this litigation. SA, at ¶¶ 6.1-6.3. Final approval of the Settlement Agreement will also result in dismissal with prejudice of Plaintiffs' claims against Forever 21. SA, at § IV.

### A. The Settlement Class

The proposed settlement class (the "Settlement Class") is defined as:

-4-

> All persons residing in the United States who used a payment card to make a purchase at an affected Forever 21 point-of-sale device during the Security Incident, or whose payment card information was inadvertently stored in Forever 21's central database and determined to be at risk.

SA, at ¶1.25. The Settlement Class excludes: (i) Forever 21 and its officers and directors; (ii) all Settlement Class members who timely and validly request exclusion from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of the Settlement Agreement; (iv) the attorneys representing the Parties in the Litigation; (v) the banks and other entities that issued payment cards which were utilized at Forever 21 during the Security Incident; (vi) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the criminal activity occurrence of the Security Incident or who pleads guilty or *nolo contendere* to any such charge. SA, at ¶1.25.

### B. The Settlement Benefits

As more fully explained in the Settlement Agreement, all Settlement Class members who submit a valid claim during the claim period (which will run until 120 days following commencement of the notice program) will be entitled to expense reimbursement of up to $250 for the following categories of potential expenses incurred as a result of the Security Incident:

- unreimbursed bank fees;
- unreimbursed card reissuance fees;
- unreimbursed overdraft fees;
- unreimbursed charges related to unavailability of funds;
- unreimbursed late fees;
- unreimbursed over-limit fees;
- long distance telephone charges;

- cell minutes (if charged by minute), Internet usage charges (if charged by the minute or by the amount of data usage and incurred solely as a result of the Security Incident), and text messages (if charged by the message and incurred solely as a result of the Security Incident);
- unreimbursed charges from banks or credit card companies;
- postage; and,
- interest on payday loans due to card cancelation or due to over-limit situation;
- costs of credit report(s) purchased by between April 13, 2017 and the Claims Deadline (with reasonable documentation and an affirmative statement by Settlement Class Member that it was purchased primarily because of the Security Incident, and with proof of purchase); and
- up to $135 in costs incurred toward credit monitoring, identity theft insurance, or similar products purchased between April 13, 2017 and the Claims Deadline.

SA, at ¶2.1. Additionally, the expense reimbursement category covers time spent dealing with the repercussions of the Security Incident. If a Settlement Class member experienced fraudulent charges on their payment card, regardless whether or not the charges were reimbursed or reversed,  the Settlement Class member may receive $25 representing compensation for inconvenience associated with up to one hour of lost time, plus an additional $25 per hour for up to four (4) hours of documented time spent dealing with the Security Incident. If no fraudulent charges occurred, a Settlement Class member may receive reimbursement for up to three (3) hours of lost time, calculated at the rate of $25 per hour. SA, at ¶2.1. To support their claims, Settlement Class members can submit reasonable documentation or an explanation that the out-of-pocket expenses and charges claimed were both actually incurred and plausibly arose from the Security Incident.

Additionally, any Settlement Class members who experienced extraordinary monetary out-of-pocket losses will be eligible for reimbursement in the amount up to

$10,000 per claim. SA, at ¶2.2. Settlement Class members with extraordinary expense claims are also eligible to submit a claim for ordinary expense reimbursement.  SA, at ¶2.2.

### C. The Proposed Notice Plan

The Settlement provides a comprehensive notice program to be administered by the Settlement Administrator, subject to Court approval.  As more fully described below, within 30 days after the Court preliminarily approves the Settlement, the Notice Plan will commence.  SA, at ¶ 3.2. Separate and apart from any payment to Settlement Class members under the provisions described above in § IV.B., Defendants will pay any and all notice and administrative costs associated with the Settlement. SA, at ¶2.6.

#### 1.    Notice and Settlement Administrator

The Settlement Administrator will have those responsibilities set forth in the Settlement Agreement, including acting as the notice agent and processing and resolution of claim forms, opt outs, objections and approval of claims.   The costs to be paid to the Settlement Administrator for claims administration and class notice is being paid by Defendants separate and apart from the Settlement relief and, accordingly, is an additional benefit to the Settlement Class. The parties solicited bids and notice plan proposals from multiple vendors and propose  Heffler Claims Group LLC ("Heffler") to provide notice and settlement administration. Heffler is a nationally recognized class action notice and administration firm that has designed a class notice plan for this case, which the parties and Heffler believe is an effective plan.

#### 2.    Publication Notice

The Declaration of Jeanne Finegan ("Finegan Decl.") (attached as Exhibit 2), describes the credentials of Heffler, and sets forth the proposed notice program (the "Notice Plan") relating to the Settlement here. Since Defendants do not possess the contact information of Class Members, Heffler has designed a plan that will use publication notice to reach the greatest practicable number of members of the Settlement Class. Finegan Decl. at ¶¶ 32-33.

The Parties have worked with Heffler to create a notice that is easily understandable and is reasonably calculated to inform potential Settlement Class members about the Settlement. A copy of the proposed Detailed Notice is attached as Exhibit C to the Settlement Agreement (the "Detailed Notice"). The notice is carefully written in plain English and unnecessary acronyms were avoided. Additionally, the proposed Detailed Notice contains information concerning: the nature of the action and Plaintiffs' claims; the definition of the Settlement Class; the class claims, issues, and defenses; the binding effect of a class judgment on Class members; and a toll-free number and website address to obtain more information and file a claim. SA, at ¶ 3.2. The proposed Detailed Notice includes clear instructions on how to exclude oneself from the Settlement Class and on how to object to the Settlement and/or any award of attorney's fees. The Detailed Notice states the date of the final approval hearing and clearly state that the date may change without further notice to the class.

The proposed Notice Plan combines targeted online display, internet search, and social media notice campaign to reach 80% of the Settlement Class an average of 2.2 times.   Finegan Decl. at ¶¶ 13, 31. The Notice Plan will deploy more than 33 million online displays and ads across pre-vetted websites and social media platforms such as Facebook and Instagram. Finegan Decl. at ¶ 22.  The Notice Plan also incorporates the targeting of Settlement Class members through the use of location targeting by sending online ads to mobile devices connected to Wi-Fi spots near Forever 21 stores. Finegan Decl. at ¶ 25. Online ads will also be targeted to people conducting internet searches related to Forever 21. Finegan Decl. at ¶ 25. The online displays and ads will include an embedded link to the Settlement Website. Finegan Decl. at ¶ 30.  Additionally, a press release announcing the Settlement and advising of the Settlement website will be issued on PR Newswire's US1 Newslines which broadcasts nationwide. Finegan Decl. at ¶ 28.

The estimated cost of the Notice Plan and settlement administration, which does not affect the monetary relief available to the Settlement Class, is approximately $200,000.  Martin Decl. at ¶ 23.

### 3. Settlement Website

No later than 20 business days following entry of the Preliminary Approval Order, the Settlement Administrator will create a dedicated Settlement Website: www.F21CardSettlement.com.   The website will make available to Settlement Class Members information and details on the Settlement, the Second Amended Class Action Complaint, the Detailed Notice, Claim Form, the Settlement Agreement, and other relevant settlement and court documents. Further, the Settlement Administrator will maintain a toll-free number where Settlement Class Members can obtain additional information. The Settlement Website shall be maintained until sixty (60) Days after the Claim Deadline has passed.

### D. Service Awards to Representative Plaintiffs and Attorneys' Fees, Costs, and Expenses

The Parties did not discuss attorneys' fees, costs, expenses, and/or service awards for Plaintiffs (as class representatives) until after the substantive terms of the Settlement Agreement had been agreed upon. Martin Decl., at ¶ 28. Only after reaching the material terms of the Settlement Agreement did Plaintiffs' and Defendants' counsel begin discussion and reach an agreement that, subject to Court approval, Defendants would pay Plaintiffs' attorneys' fees, costs, and expenses in the amount of $500,000 and service awards to Plaintiffs (as class representatives) in the amount of $2,500 each. SA, at ¶¶ 7.2-7.3.; Martin Decl., at ¶¶ 29, 33. Payment of Plaintiffs' attorneys' fees, costs, and expenses, as well as the service awards, are to be separate from any and all class-wide compensation to which Settlement Class members are entitled and, thus, will not diminish or alter the benefits and recovery available to Settlement Class members in any way. SA, at ¶ 7.6; Martin Decl., at ¶ 28. The effectiveness of the Settlement Agreement is not contingent on the Court's awarding of the full amounts of the requested service awards of attorneys' fees, costs, and expenses. SA, at ¶ 7.6.

The proposed Class Representatives, Jowharah Hameed-Bolden and Ali Conrad O'Brien, have given their time and accepted their responsibilities admirably, participating

actively in this litigation as required and in a manner beneficial to the Class generally. Martin Decl., at ¶ 33. The proposed service awards are presumptively reasonable. *See, e.g.*, *In re Yahoo Mail Litig.*, No. 13-cv-4980, 2016 WL 4474612, at *11 (N.D. Cal. Aug. 25, 2016) ("The Ninth Circuit has established that $5,000 is a reasonable benchmark" for service awards). Here, there are no conditions placed on the incentive award nor does the amount of the award undermine the adequacy of the class representative. *See Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157 (9th Cir. 2013)).

### E. Release of Claims

Under the Settlement Agreement, each member of the Settlement Class will be deemed to have released any and all claims and causes of action that were or could have been brought in the Litigation based on, relating to, concerning or arising out of the Security Incident and alleged theft of payment card data or other personal information or the allegations, facts, or circumstances described in the Litigation. SA, at ¶¶ 1.20, 6.1-6.3; Martin Decl., at ¶ 16. Settlement Class Members are only releasing claims based on the identical factual predicate, as required under Ninth Circuit precedent. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010). Under this precedent, the Ninth Circuit has "held that federal district courts properly released claims not alleged in the underlying complaint where those claims depended on the same set of facts as the claims that gave rise to the settlement." *Id.* There are not any differences between the claims to be released and the claims set out in the operative Complaint.

### IV. ARGUMENT

Federal Rule of Civil Procedure 23(e) governs a district court's analysis of a proposed class action settlement and creates a process for approval. A court must determine that it is likely to: (i) approve the proposed settlement as fair, reasonable, and adequate, after considering the factors outlined in Rule 23(e)(2); and (ii) certify the settlement class after the final approval hearing. FED. R. CIV. P. 23(e)(1)(B); *see* 2018 Advisory Committee Notes to Rule 23 (standard for directing notice is whether the Court "likely will be able both to approve the settlement proposal under Rule 23(e)(2) and . . .

certify the class for purposes of judgment on the proposal"). When those determinations are likely, a court will direct notice to the proposed settlement class, describing the terms of the proposed settlement and the definition of the proposed class, to give them an opportunity to object to or to opt out of the proposed settlement. Fed. R. Civ. P. 23(c)(2)(B); FED. R. CIV. P. 23(e)(1), (5). Then, after a hearing, the court may grant final approval of the proposed settlement on a finding that the settlement is fair, reasonable, and adequate, and certify the settlement class. FED. R. CIV. P. 23(e)(2).

> ### A. The Proposed Settlement Class Should Be Certified

> #### 1. The Settlement Class Meets the Requirements of Rule 23(a)

In assessing the Parties' Settlement Agreement, the Court must determine that it will likely be able to certify the underlying Settlement Class pursuant to the requirements of Rule 23. FED. R. CIV. P. 23(e)(B)(ii); *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation*, Fourth, § 21.632 (2004). The prerequisites for class certification under Rule 23(a) are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy—each of which is satisfied here. FED. R. CIV. P. 23(a). The proposed Settlement Class includes approximately 500,000 people, and so readily satisfies the numerosity requirement. FED. R. CIV. P. 23(a) (1); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

The proposed class also satisfies the commonality requirement of Rule 23(a), which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The central question behind every claim in this litigation is whether Defendants adequately secured consumers' payment card information. The answer to that question depends on common evidence that does not vary from class member to class member, and so can be resolved—whether through litigation or settlement—for all class members at once.

The final requirements of Rule 23(a)—typicality and adequacy—are likewise satisfied here. The proposed Class Representatives used their payment cards for purchases at Forever 21 stores during the breach period, and were affected by the same data security practices the proposed Class Representatives allege harmed the Settlement Class. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("it is sufficient for typicality if the plaintiff endured a course of conduct directed against the class"). The proposed Class Representatives also have no conflict with the Settlement Class; have participated actively in the case; and are represented by experienced attorneys. *See Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir. 2003) (adequacy satisfied if Plaintiffs and their counsel lack conflicts of interest and are willing to prosecute the action vigorously on behalf of the class).

## 2.    The Class Meets the Requirements of Rule 23(b)(3)

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, the Settlement Class is maintainable under Rule 23(b)(3) because common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair resolution of the controversy. *Id.* Proposed Class Representatives' liability case depends, primarily, on whether Defendants used reasonable data security to protect payment card data. That question can be resolved using the same evidence for all Settlement Class members, and thus is the precise type of predominant question that makes a class-wide adjudication worthwhile. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) …'"). This case involves a single cybersecurity incident that impacted *all* Settlement Class members whose data was potentially stolen in connection with using a payment card at Forever 21 properties, giving rise to claims under state law

-12-

that *all* share the same common nucleus of facts and law pertaining to the duty of care and whether Defendants violated it.

Predominance is satisfied in this case and the common legal and factual issues here outweigh any "questions affecting only individual members." FED. R. CIV. P. 23(b)(3). Familiar Ninth Circuit standards going back at least 20 years to *Hanlon*, govern the predominance inquiry: here, as in in *Hanlon*, "a common nucleus of facts and potential legal remedies dominate this litigation." 150 F.3d at 1022. Thus, any variations in state law do not outweigh the predominance of factual and legal issues with respect to the constellation of claims in this case in the settlement context. *Id.* at 1022–23 (holding that "idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims"). "Variations in state law do not necessarily preclude a 23(b)(3) action.'" *Id.* at 1022. Here, there are no material differences as to proposed Class Representatives' common-law negligence or breach of implied contract claims. *Id.* at 1022; *Just Film,* 847 F.3d at 1122. The basic elements of contract law, as they apply to the facts in this Litigation, are the same across states. *See In re Conseco Life Ins. Co. LifeTrend Ins. Sales and Mktg. Litig.*, 270 F.R.D. 521 (N.D. Cal. Oct. 6, 2010); *cf. American Airlines v. Wolens*, 513 U.S. 219, 233 n.8 (1995) ("Because contract law is not at its core 'diverse, nonuniform, and confusing,' we see no large risk of nonuniform adjudication….") (citations omitted). The breach of implied contract claim focuses on issues of Defendants' privacy policy and the alleged breach of that policy, both of which are subject to common proof. There are no material differences in state law with respect to interpretation or breach that would require *individualized* adjudication of the facts here at issue. *Just Film,* 847 F.3d at 1123.

True, this case includes an unfair competition claim under California Business & Professions Code section 17200, the precise kind of consumer protection statute which would result in application of multiple state laws under, e.g., *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589-90 (9th Cir. 2012). But let us presume that the consumer

-13-

protection laws of multiple states apply because of this single claim. That supposition alone does not defeat predominance.

Here, as in in *Hanlon*, "a common nucleus of facts and potential legal remedies dominate this litigation." 150 F.3d at 1022. Class members here do not occupy different factual positions that might create conflicts in the legal viability of their claims. Much like *Hanlon's* class members who all had "the same problem – an allegedly defective rear latchgate…" *Hanlon,* 150 F.3d at 1021, the Settlement Class members here all suffered the same loss of personal information from the same single cybersecurity incident, which compromised payment-card data. The Settlement Class members' claims result from the same injury, from the same origin, and are based on the same facts.

In light of the common factual evidence, this Court may conclude that "common, aggregation-enabling, issues in the case are more prevalent or important," *Tyson Foods*, 136 S. Ct. at 1045, even if there are variations between the state statutory claims, particularly where much of that variation applies statewide rather than individually. For all of these claims, variations in state law that apply statewide, or to other large sub-groups of the Settlement Class, do not pose individualized issues at all, and raise only questions of manageability, which is irrelevant to settlement under governing law. *Amchem Prods*, 521 U.S. at 623. Likewise, there is a long-standing rule that individualized damages issues do not defeat predominance. *Tyson Foods*, 136 S.Ct. at 1045; *Vaquero v. Ashley Furn.*, 824 F.3d 1150, 1155 (9th Cir. 2016).

Finally, since "the proposal is that there be no trial," manageability considerations have no impact on whether the Settlement Class should be certified. *Amchem*, 521 U.S. at 620. There is only the predominant issue of whether Defendants properly secured the payment card data of consumers, such that Defendants' security should be improved and class members affected by the Security Incident provided with a remedy. As a practical matter, that issue cannot be resolved through individual trials or individual settlement negotiations: the amount at stake for individual class members is too small, the technical

-14-

issues involved are too complex, and the required expert testimony and document review too costly. *See Just Film,* 847 F.3d at 1123.[3]

In sum, because of the common experience of every individual in the Settlement Class with respect to the single event of the Forever 21 Security Incident, the common evidence pertaining to data security and the Security Incident, and the common legal issues across the common law and statutory claims, the Settlement Class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623.

## B.     The Court Should Grant Preliminary Approval

Federal Rule of Civil Procedure 23(e) provides that a class action cannot be settled or compromised without approval by the court. FED. R. CIV. P. 23(e). Judicial approval is required regardless of whether the action is certified for trial and later settled or is certified for purposes of settlement. *Manual for Complex Litigation,* Fourth, § 21.61 (2004). The Ninth Circuit recognizes the "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1277 (9th Cir. 1992). The strong preference for class action settlements is precipitated by the overwhelming uncertainties of the outcome, expense, management, and difficulties of proof inherent in class action lawsuits. *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (noting that class action settlements are especially favorable in light of "an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense."). "[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the

---

[3] A class action is not only the superior method of adjudicating consumer claims arising from this data breach, it is the *only* method practicable—just as in other data breach cases where a class wide settlement has been approved. *See, e.g., In re Linkedin User Privacy Litig.,* 309 F.R.D. 573, 585 (N.D. Cal. 2015); *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *6–7 (W.D. Ky. Dec. 22, 2009).

proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton*, 327 F.3d at 952; *see Hanlon*, 150 at 1026 ("settlement approval that takes place prior to formal class certification requires a higher standard of fairness"). As the Ninth Circuit has observed, "[p]rior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Ultimately, "[s]trong judicial policy favors settlements." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (ellipses and quotation marks omitted) (quoting *Class Plaintiffs*, 955 F.2d at 1276).

The approval process typically involves two steps. First, the settlement is approved preliminarily and notice is directed to be given to the class following the submission by the parties of relevant information concerning the terms of the settlement and the history of the litigation. Second, after notice of the proposed settlement is given to the proposed settlement class, the court conducts a final approval hearing, also known as a fairness hearing. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004). Ultimately, to approve the proposed Settlement Class, this Court must determine that it is fair, reasonable, and adequate. *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco.*, 688 F.2d. 615, 625 (9th Cir. 1982). A presumption of fairness exists where the settlement is reached through arm's-length negotiations, sufficient investigation has taken place to allow counsel and the Court to act intelligently, and counsel is experienced in similar types of litigation. *Duhaime v. John Hancock Mut. Life. Ins. Co.*, 177 F.R.D. 54, 68 (D. Mass. 1997) (settlement is presumed fair where it is the product of arm's-length negotiations).

In the past, courts have focused only on whether the proposed agreement appears to be non-collusive, is free of "obvious deficiencies," and generally falls within the range of "possible" approval. *See, e.g.*, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078,

1079-80 (N.D. Cal. 2007). More recently, however, several courts in this Circuit have criticized the notion that review of proposed class settlements at the preliminary approval stage need only involve a "quick look," or a watered-down version of final approval. *See Cotter v. Lyft, Inc.,* 193 F. Supp. 3d 1030, 1036 (N.D. Cal. 2016).[4]

The revisions to Rule 23—effective on December 1, 2018—indicate a need for a more detailed analysis. Under the revised Rule, notice should be given to the class, and hence, preliminary approval should only be granted, where the Court "will likely be able to" finally approve the settlement under Rule 23(e)(2) and certify the class for settlement purposes. FED. R. CIV. P. 23(e); *see* 2018 Amendment Advisory Committee Notes to FED. R. CIV. P. 23(e). Approval under now-amended Rule 23(e)(2) requires that the settlement be fair, reasonable, and adequate, taking into consideration the following factors:

(1) whether the class representatives and class counsel have adequately represented the class;

(2) whether the proposed settlement was negotiated at arm's length;

(3) whether the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(4) whether the proposed settlement treats class members equitably relative to each other.

Not surprisingly, there is overlap between the 2018 amendments to Rule 23(3)(2)

---

[4] *See O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1122 (N.D. Cal. 2016); *Viceral v. Mistras Grp., Inc.*, 2016 WL 5907869, at *6 (N.D. Cal. Oct. 11, 2016).; *Hunt v. VEP Healthcare, Inc.*, No. 16-cv- 04790-VC, 2017 WL 3608297 (N.D. Cal., Aug. 22, 2017); *Eddings v. DS Services of America, Inc.*, No. 15-cv-02576-VC, 2016 WL 3390477 (N.D. Cal. May 20, 2016).

and the factors already used in this Circuit for final approval: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement; and (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth*, 654 at 946. Indeed, these factors are substantially similar to those that courts in the Ninth Circuit already considered. *See, e.g., In re Tableware*, 484 F. Supp. 2d at 1079 (considering preliminary approval appropriate "where [1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies; [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval . . . .") (internal quotation and citation omitted) (emphasis added).

Now-amended Rule 23(e)(2), however, establishes a uniform set of core approval factors that the Advisory Committee Note states "should always matter to the decision" of the district court as to whether to approve the proposed settlement. 2018 Amendment Advisory Committee Notes to FED. R. CIV. P. 23(e)(2). Accordingly, Plaintiff addresses each of the following settlement factors articulated by the Ninth Circuit and by the now-amended Rule 23(e) (while recognizing that at least one of those factors—the reaction of class members—is not yet known) and submit that they collectively weigh in favor of judicial approval.

While some factors "cannot be fully assessed until the court concludes its fairness hearing, 'a full fairness analysis is unnecessary at th[e preliminary approval] stage.'" *Marin v. General Assembly Space, Inc.*, No. CV 17-05449-SJO-KSX, 2018 WL 4999955, at *9 (C.D. Cal. July 31, 2018) (citing *Alberto*, 252 F.R.D. at 665 (quoting *West v. Circle K Stores, Inc.*, No. Civ S-04-0438 WBS GGH, 2006 WL 1652598, at *9 (E.D. Cal. June 13, 2006))). "Instead, preliminary approval and notice of the settlement terms to the

proposed class are appropriate where '[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval....'" *Marin*, 2018 WL 4999955, at *9 (quoting *In re Tableware*, 484 F. Supp. 2d at 1079). Further, "the Court need not 'specifically weigh[ ] the merits of the class's case against the settlement amount and quantif[y] the expected value of fully litigating the matter.'" *Marin*, 2018 WL 4999955, at *9 (quoting Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009)). "Instead, the Court need only determine whether the proposed settlement is 'the product of an arms-length, non-collusive' negotiation. *Id.*

Proposed Class Representatives meet this threshold inquiry.

### i.    The Strength of Plaintiffs' Case

Proposed Class Representatives have a good case for liability. Most of the claims of the FAC had survived Defendants' motion to dismiss. Proposed Class Representatives were prepared to submit evidence supporting their assertion that Defendants failed to take a number of industry-standard measures to secure consumers' payment card data; ignored warning of data security vulnerabilities; and that Defendants missed opportunities to detect and stop the Security Incident while it was underway. Proposed Class Representatives also submits they could show that they suffered damages as a result of the Security Incident; however, throughout the litigation, Defendants continually disputed the sufficiency of Proposed Class Representatives' allegations, and Defendants believe the informal exchange of discovery allowed Defendants to develop a factual record to support many of the same basic arguments Defendants raised on their motion to dismiss. Although Proposed Class Representatives are confident they could obtain a favorable ruling on a motion for summary judgment and a motion for class certification, this is not a certainty. Moreover, as discussed above, the proposed Settlement Agreement provides for monetary benefits that likely exceed what class members would likely be able to recover if Proposed Class Representatives were to establish class-wide liability.

Although the last several years have seen a significant number of cases filed following data breaches and the identity theft which may follow, class-wide damage models remain the subject of debate among parties to litigation and a data breach case has not yet gone to trial. Defendants here would have no doubt advanced challenges to a class-wide damage model. Thus, the Settlement Agreement brings certainty to the issues. Moreover, the level of effort that each class member must undertake to claim those settlement benefits is likely significantly less than if he or she were forced to prove and claim causation and damages in a contested proceeding.

### ii.     The Risk, Expense, Complexity, and Likely Duration of Further Litigation

Although Proposed Class Representatives are confident in the merits of their claims, the risks involved in prosecuting a class action through trial cannot be disregarded. Almost all class actions involve a high level of risk, expense, and complexity, which is one reason that judicial policy so strongly favors resolving class actions through settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). This is not only a complex case, but it is in an especially risky field of litigation in which a data breach class case has not yet gone to trial or undergone the rigors of any subsequent appeals. *See, e.g.*, *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23, 2010) (approving data breach settlement, in part, because "proceeding through the litigation process in this case is unlikely to produce the Plaintiffs' desired results"). Data breach cases continue to be among the most risky and uncertain of all class action litigation and certification is still rare. Through the Settlement Agreement, Proposed Class Representatives and Settlement Class members gain significant benefits without having to face further risk.

### iii.    The Risk of Maintaining Class Action Status throughout Trial

Plaintiffs believes they would prevail on a motion for summary judgment and then also prevail on class certification; however, there is little directly analogous precedent upon which to rely. Class certification has been denied in other consumer data breach cases and it was only recently that the first litigation class was certified in a consumer data breach case. *See Smith v. Triad of Alabama, LLC,* 2017 WL 1044692, at *6 (M.D. Ala. Mar. 17, 2017). The lack of direct precedent creates an additional risk in achieving and maintaining class action status throughout trial and even appeal. While Proposed Class Representatives feel they would be able to obtain certification outside of a settlement context and maintain certification through trial, this is not a certainty. Additionally, any potential certification would be subject to later appeal and potential reversal. Also, the cost of trial and any appeals would be significant and would delay the resolution of this litigation without the guarantee of any relief.

### iv.    The Amount Offered In Settlement

Through arm's-length negotiations between sophisticated counsel experienced in litigating complex cases and through the assistance of an experienced mediator, the Parties were able to reach an agreement that compares very favorably to settlements in payment card data breach class actions that have been approved by other courts. As discussed above, payment card data breach class action cases are particularly risky and challenging and the outcome of this settlement should be considered not only as favorable compared to other payment card data breach class action settlements, but as particularly favorable given that multiple other payment card data breach cases against hotel or restaurant chains have resulted in no recovery for the plaintiff or class members. *See, e.g.*, *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 3:16-cv-00014-GPC-BLM (S.D. Cal.) (ECF No. 56) (order dismissing payment card data breach case) (July 11, 2017); *Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89 (2d Cir. 2017) (order affirming dismissal of payment card data breach case).

- The Home Depot data breach, which involved the theft of approximately 92 million consumers, consisting of 40 million consumers' payment data and 53 million consumers' email addresses settled creating a $13 million fund for consumers, paying an additional $6.5 million for internet and dark web monitoring services (which was eligible to be repaid from the fund), and $7.5 million in attorney fees. For the 40 million payment cards at issue, the settlement equates to approximately .33 cents per card. *See In re the Home Depot, Inc., Customer Data Sec. Breach Litig.,* No. 1:14-MD-02583-TWT, ECF No. 181-2 (March 7, 2016) (Settlement Agreement); *id.*, 2016 WL 6902351, at *6 (N.D. Ga. Aug. 23, 2016) (order approving settlement).

- The Target data breach, which compromised the personal information of nearly 110 million consumers, resolved with Target establishing a settlement fund of $10 million and separately paying $6.75 million in attorney fees. This amounts to approximately .09 cents per card. *See In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL 14-2522-PAM, ECF No. 358-1 (March 18, 2015) (Settlement Agreement); *id.*, 2017 WL 2178306, at *2 (D. Minn. May 17, 2017) (order approving settlement on remand from the 8th Circuit), *appeal pending* Case No. 15-3912 (8th Cir.).

- The Neiman Marcus data breach, which compromised the personal information of approximately 2,187,773 individuals who held different payment card accounts with Neiman Marcus establishing a settlement fund of $1,600,000, $400,000 of which went to costs for the Claims Administrator and $530,000 for attorneys' fees, costs and expenses. This equates to approximately .31 cents per card. *See Remijas v. The Neiman Marcus Group, LLC*, No. 14-cv-1735, ECF No. 145 (March 17, 2017) (Memorandum in Support of Preliminary Approval).

Here, the recovery compares well against other payment card data breach settlements. Also, as discussed above, the Settlement amount is also a good result when

considering the average award amount in a similar recent payment card case, and provides a mechanism whereby class members can obtain a recovery of their respective damages.

The proposed Settlement will also reduce the risk that the payment card data that consumers continue to entrust to Defendants will be compromised by future attacks. Defendants will adopt a number of significant data security measures negotiated with the assistance of a cyber security expert and proposed Class Counsel's experience in other data breach cases, including those referenced above. These measures include performing annual PCI DSS audits and penetration testing, implementing an annual security awareness program, and improving payment card acceptance technology.

v.      **The Extent of Discovery Completed and the Stage of the Proceedings**

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239. Although the Parties did not conduct formal discovery, the Parties engaged in an informal exchange of discovery prior to mediation with the goal of preparing for a meaningful mediation and conserving resources to be applied toward an appropriate relief for the Settlement Class. Martin Decl., at ¶ 13. Proposed Class Counsel also retained a cybersecurity expert to review the PFI report from the Security Incident and opine on appropriate data security measures that could be undertaken by Defendants to prevent future cyberattacks. Martin Decl., at ¶ 13. Proposed Class Representatives know the strengths and weaknesses of the Settlement Class' claims and have worked with experts to value those claims and understand the business practice changes necessary to protect Settlement Class members' payment card data in the future. Martin Decl., at ¶¶ 13, 19. From the information Proposed Class Representatives obtained prior to mediation, they were well prepared to negotiate a settlement on behalf of the Settlement Class at the mediation with retired United States District Judge Gary Feess of Phillips ADR. Martin Decl., at ¶ 14.

Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement
Case No.: 2:18-cv-03019-SJO-JPR

### vi.  The Experience and Views of Counsel

As set forth in the attached resumes and declaration, Proposed Class Counsel have considerable experience in class actions and specifically data breach litigation. *See* Martin Decl., at ¶ 30. Proposed Class Counsel are confident, based on their extensive experience as class action litigators and with other similar data breach class actions that they have a full understanding of the facts at issue, and the strengths and weaknesses of the legal allegations in the complaint. Thus, Proposed Class Counsel is qualified to evaluate the class claims, value of the settlement versus moving for certification and going to trial, and the viability of possible affirmative defenses. *See Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of Plaintiffs' counsel should be given a presumption of reasonableness."). Proposed Class Counsel believes the Settlement Agreement is fair and reasonable in light of the complexities of the case, the uncertainties of class certification and litigation, and the secured benefit to the Settlement Class. Martin Decl., at ¶ 30.

### vii.  The Presence of a Governmental Participant

No governmental agency is involved in this litigation, but the Attorney General of the United States and Attorneys General of each of the States will be notified of the proposed settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and given an opportunity to raise any objections or concerns they may have.

### viii.  The Reaction of Class Members to the Proposed Settlement

The class has yet to be notified of the settlement and given an opportunity to object, so it is premature to assess this factor. Before the final approval hearing, the Court will receive and have a chance to review all objections or other comments received from class members, along with a full accounting of all opt-out requests.

### ix.  Whether the Settlement is a Product of Collusion among the Parties

One indication of whether a settlement is fair and reasonable is whether it is the product of serious, arm's-length negotiations following serious investigation of the merits

of the case. Such negotiation and investigation minimize any concerns that the Settlement might be the result of collusion among opposing parties or their counsel to undermine the interests of the class for their own benefit. The Settlement Agreement in this case easily meets that standard. Class Counsel undertook factual and legal investigation of the issues prior to filing the case and during the hard-fought litigation. The parties exchanged informal discovery prior to mediation about both the facts and law at issue. Finally, a neutral and experienced mediator, retired United States District Judge Gary Feess of Phillips ADR, presided over the parties' formal, arm's length and adversarial mediation on February 19, 2019. Additionally, Judge Feess has agreed to serve as the Claims Referee during the claims process, if the Court so approves. The Settlement Agreement clearly emerges from a formal, arms-length negotiation process between the parties. Martin Decl., at ¶ 20, 26.

## C. The Court Should Approve the Proposed Settlement Notices and Authorize Their Dissemination

In any proceeding that is to be accorded finality, due process requires that interested parties be provided with notice reasonably calculated, under the circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). That means the settlement notices must fairly apprise the class members of the terms of the proposed compromise and give class members sufficient information to decide whether they should accept the benefits offered, opt out and pursue their own remedies, or object to the settlement. *Id*. Additionally, the notice must be designed to have a reasonable chance of reaching a substantial percentage of the class members. *Id.* at 318 (explaining notice must be reasonably calculated to reach interested parties).

Here, the proposed Notice and the method of dissemination meet each of these requirements. As explained above, since Defendants do not have information identifying Settlement Class members, notice will be provided by publication using online display

banner advertising, a social media campaign, and a press release disseminated nationwide.  The proposed Notice Plan will target Settlement Class members with more than 33 million online ads and has been crafted to reach 80% of the Class 2.2 times on average. Finegan Decl., ¶ 13, 22, 32.   Copies of all the notice documents are attached to the Settlement Agreement; they are clear and concise, and directly apprise Settlement Class Members of all the information they need to know in order to make a claim.

Moreover, on the dedicated Settlement website, Settlement Class Members can review the Detailed Notice, which provides clear and concise information with respect to all the relevant aspects of the litigation.[5] Thus, the Notice provides all the information necessary for Settlement Class Members to make informed decisions with respect to whether they remain in or opt out of the Settlement Class, or object to the proposed Settlement Agreement. Martin Decl., at ¶ 24. The Notice Plan has been developed by Heffler—a notice provider with significant experience in designing notice plans in large and national class actions similar to this one. Martin Decl., at ¶ 22. Accordingly, the content and method of dissemination of the proposed Notice fully comports with the requirements of due process and applicable case law.

The Court should approve the proposed Notice and direct that it be distributed as agreed by the parties.

### D.    The Court Should Appoint Plaintiff's Counsel as Class Counsel

The next step when deciding whether to preliminarily approve a settlement is to appoint settlement class counsel. Indeed, under Rule 23, "a court that certifies a class

---

[5] This includes: (a) the class definition and statement of claims; (b) the terms of the Settlement Agreement; (c) the binding effect of any judgment approving the Settlement on those who do not opt out; (d) the right to and procedure for opting out of or objection to the Settlement; (e) who to contact to obtain additional information regarding the Settlement or the litigation; (f) the manner in which compensation will be provided to the Class Representatives to compensate them for their service to the Class; and, (g) the manner in which Class Counsel will be compensated.

must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(1)(B). In making this determination, courts generally consider the following attributes: (1) the proposed class counsel's work in identifying or investigating potential claims; (2) the proposed class counsel's experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) the proposed class counsel's knowledge of the applicable law; and (4) the proposed class counsel's resources committed to representing the class. FED. R. CIV. P. 23(g)(1)(A)(i–iv).

Here, proposed Class Counsel have extensive experience prosecuting class action cases, and specifically data breach cases. *See* Firm Resumes, Martin Dec. Ex. A. Accordingly, the Court should appoint as Class Counsel Jean Martin and John Yanchunis of Morgan & Morgan Complex Litigation Group, Kevin Ruf and Brian Murray of Glancy Prognay and Murray, LLP, Paul Whalen of Law Office of Paul C. Whalen, and Jasper Ward of Jones Ward PLC.

### E.   The Court Should Schedule a Fairness Hearing and Approve the Proposed Preliminary Approval Order

Once the Court has ruled on the motion for preliminary approval, the times for providing notice, opting out of the Settlement Class, and submitting claims will begin to run.

| | |
|---|---|
| Notice Begins | 30 days after Order granting preliminary approval and direction of notice |
| Claims Deadline | 120 days after Notice begins |
| Opt out Deadline | 120 days after Notice begins |
| Motion for Attorney Fees | 90 days after Notice begins |

Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement
Case No.: 2:18-cv-03019-SJO-JPR

| Final Approval Papers | 14 days prior to Final Approval Hearing |
|---|---|

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant this Motion for Preliminary Approval; provisionally certify the Settlement Class; appoint Jowharah Hameed-Bolden and Ali Conrad O'Brien as Class Representatives; appoint John Yanchunis Jean Martin, Kevin Ruf, Brian Murray, Paul Whalen, and Jasper Ward as Class Counsel; approve the Proposed Notice and authorize its dissemination to the Settlement Class; appoint Heffler to serve as the Notice and Claims Administrator; and adopt the proposed schedule for final approval.

Dated: June 28, 2019

/s Jean Sutton Martin
JEAN SUTTON MARTIN
jeanmartin@ForThePeople.com
MORGAN & MORGAN
2018 Eastwood Road Suite 225
Wilmington, NC 28403
Telephone: (813) 559-4908
Facsimile: (813) 222-4795

JOHN A. YANCHUNIS
jyanchunis@ForThePeople.com
MORGAN & MORGAN
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

BRIAN P. MURRAY
bmurray@glancylaw.com
GLANCY PRONGAY & MURRAY LLP
122 East 42nd Street, Suite 2920
New York, NY 10168

-28-

Telephone: (212) 682-5340

PAUL C. WHALEN
paul@paulwhalen.com
LAW OFFICE OF PAUL C. WHALEN, P.C.
768 Plandome Road
Manhasset, NY 11030
Telephone: (516) 426-6870

JASPER D. WARD IV
jasper@jonesward.com
JONES WARD PLC
312 S. Fourth Street
Louisville, KY 40202
Telephone: (502) 882-6000

***Attorneys for Plaintiffs and the Proposed Class***

-29-